(101 So. 673)

## CORONA COAL CO. v. THOMAS et al. (6 Div. 215.)

(Supreme Court of Alabama. Oct. 23, 1924.)

1. **Trial** ⬅⮕85—Objection to evidence as whole, part of which is good, may be overruled in toto.

Objection to evidence as a whole, part of which is good, may be overruled in toto.

2. **Trial** ⬅⮕85—Where testimony good and bad drawn out, party drawing it out may properly advise court bad portion not insisted on.

If party draws out testimony, good and bad, which is responsive to his question, on objection being made, it is proper for him to advise court bad portion is not insisted on; otherwise court may assume he wishes testimony in as whole and invites ruling on that assumption.

3. **Trial** ⬅⮕85—Objection held properly sustained to testimony, part of which was bad, and not responsive.

Where bad portion of answer of witness was not responsive to question, failure of ex-

amining party to object to it or withdraw it was an election to treat it as pertinent, and court properly sustained general objection to answer.

**4. Pleading ⊜376—Averment, in action for injury to surface, that defendant was owner or lessee of coal rights was admission of defendant's right to mine coal, rendering proof unnecessary on that point.**

Averment in complaint, in action for injury to surface, through mining of coal, that defendant was owner or lessee of coal rights, if material at all, operated merely as admission of defendant's right to mine coal, rendering proof unnecessary on that point.

**5. Mines and minerals ⊜125—Instruction not requiring proof of ownership of coal in defendant, in action for injury to surface, held not error.**

In action for injury to surface of land through coal mine operations, that instruction did not require plaintiff to prove ownership of coal rights in defendant was immaterial, where evidence was without dispute that that defendant was in actual possession of mines, and operating them at time complained of, and only controversy was whether it mined under plaintiff's lands at that time.

**6. Property ⊜9—Possession evidence of ownership.**

Possession is evidence of ownership.

**7. Trial ⊜253(7)—Not necessary for written instructions to postulate admitted facts, or facts shown without dispute.**

It is not necessary for written instructions to postulate admitted facts, or facts shown without dispute.

**8. Mines and minerals ⊜122—Right to mine coal subservient to right of owner to have surface maintained in natural state.**

Right to mine coal is subservient to right of owner to have surface maintained in its natural state, and this right of support is absolute, and not dependent upon any question of good or bad mining.

**9. Mines and minerals ⊜122—Miner not liable for incidental injury to subterranean waters.**

Coal miner is not liable to surface owner for any incidental injury to subterranean waters necessarily occasioned by ordinary and careful operation of mines, such as loss of springs, or wells fed by subterranean streams.

**10. Trial ⊜194(14)—Charge concerning effect of blasting on well held to invade province of jury.**

In action by surface owner for injury to well through blasting operations in coal mine, instruction, holding as matter of law that concussion from blasting could not so disturb subterranean channel of stream as to cause it to lead off in some other direction, invaded province of jury,

**11. Mines and minerals ⊜122—Miner liable for loss of well caused by subsidence of surface or parting of soil.**

If well was dried up by reason of subsidence of surface or parting of soil from mining op-

erations, coal miner responsible therefor would be liable for loss of well as proximate result of breach of absolute duty to furnish subjacent support.

**12. Mines and minerals ⊜125—Whether loss of well was proximate result of breach of duty to furnish subjacent support held for jury.**

In action by surface owner, whether loss of well was proximate result of coal miner's breach of absolute duty to furnish subjacent support *held* for jury.

Appeal from Circuit Court, Walker County; Ernest .Lacy, Judge.

Action for damages by Norman Thomas and others against the Corona Coal Company. From a judgment for plaintiffs, defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Reversed and remanded.

A. F. Fite, of Jasper, for appellant.

The giving of charges A and B for plaintiffs was reversible error. Sloss Co. v. Sampson, 158 Ala. 590, 48 So. 493; Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am. St. Rep. 368.

Curtis, Pennington & Pou, of Jasper, for appellees.

The defendant having failed to make known to the court what was expected to be proved by the question asked the witness Pill, the court will not be put in error for sustaining objection. Steverson v. W. C. Agee & Co., 14 Ala. App. 448, 70 So. 298. The owner of the minerals owed the surface owner the right of support, which right is absolute. Bibby v. Bunch, 176 Ala. 585, 58 So. 916; 1 R. C. L. 395. It was immaterial under what right defendant mined, as owner or lessee, if not a trespasser. Corona C. & I. Co. v. Ferrier, 187 Ala. 530, 65 So. 780; Sloss Co. v. House, 157 Ala. 663, 47 So. 573; Sloss Co. v. Sampson, 158 Ala. 590, 48 So. 494; Mayor, etc., v. Ewing, 116 Ala. 576, 22 So. 984; Stith Coal Co. v. Harris, 14 Ala. App. 181, 68 So. 798. If the failure of the defendant properly to mine the coal caused plaintiff's damage, it is immaterial whether the mining was negligently done or not. West Pratt Co. v. Dorman, 161 Ala. 389, 49 So. 849, 23 L. R. A. (N. S.) 805, 135 Am. St. Rep. 127, 18 Ann. Cas. 750; Sloss Co. v. House, supra.

BOULDIN, J. The suit is to recover damages to the owners of lands, resulting from underground coal mining operations by the owner or lessee of the mineral and mining privileges. The injury complained of is the causing of fissures or partings in the surface, and drying up a well of water used for family and farm purposes.

The chief controversy of fact was whether the mining operations causing the injury

were conducted by defendant' or another company. It is without dispute that prior to August, 1917, the mines were operated by Corona Coal & Iron Company, and thereafter by Corona Coal Company, this defendant, a different corporation. The plaintiffs' contention is that the coal was mined under their lands after August, 1917, and the defendant's contention is that all the coal was mined out prior to that date. The injury developed in 1921.

John R. Pill, witness for defendant, testified he was employed and took charge of the mines as mining engineer of the former company March 1, 1912; that at that time the mining operations had reached the line of plaintiffs' lands; and that the balance of the coal under their lands was mined prior to August, 1917. Witness identified a map of the mines, which was later introduced in evidence, and testified the map was made in March, 1912, to show where the workings were at the time he took charge, and that he checked up the map at the time and found it correct. The record then recites:

"Defendant's attorney then propounded to the witness the following question:

"Q. Well you were there under the ground?
"Witness answered:
"A. Yes, sir; I had the references and record receipts we put on the record.

"Plaintiff objected to the foregoing question and answer on the ground that it was irrelevant, incompetent, and immaterial, and it was not shown that he made it and that shows that somebody else did make it, and, further, because the contents of the receipts would not be evidence. The court sustained the objections, to which action of the court the defendant then and there duly excepted.

"Witness continued:

"I checked up those surveys and found that it had been mined prior to August, 1917."

This ruling is urged as reversible error. There is presented a question of practice, involving the rights and duties of the parties and the duty of the trial court, which should be clearly settled and defined. The question sought to show a personal inspection and knowledge on the part of the witness. It called for a direct answer, Yes, or No. The testimony called for was pertinent, and not subject to any of the objections made. The answer of the witness was in part direct and responsive, and in part irresponsive and subject to the objections made.

The objections were to the question and answer, as a whole, upon general grounds, and on special grounds directed to the bad portion of the answer. The bad portion was easily severable and subject to objection apart from the good. The ruling was general, resulting in excluding both the good and the bad.

[1] The rule is well known that an objection to evidence as a whole, part of which is good, may be overruled in toto. The court is under no duty to differentiate for the par-

ties, and exclude the bad portion on such objection. What is the proper rule, in case the court excludes the good with the bad on such objection?

[2, 3] It appears that, if a party draws out testimony, good and bad, which is responsive to his question, an objection being made, it is proper for him to advise the court the bad portion is not insisted upon. Otherwise the court may assume that he wishes the testimony in as a whole, and invites a ruling on that assumption. A party has a right to such ruling, if he so elects. If the court holds the evidence not good as a whole, and he then wishes to get in the good, we think the court should be so advised, and a ruling invited thereon. This seems to make the rule operate mutually and fairly on both parties. Neither can expect the court to direct the conduct of the cause in that regard. It must be noted here that the bad portion of the answer was not responsive to the question. This could only be taken advantage of by the examining party. If not withdrawn or objected to by him, this is an election to treat it as pertinent. There was no intimation here that defendant desired the statement that the witness went underground to be severed from the objectionable portion of the answer, and remain before the jury. Rather the question following the court's ruling indicated a desire to make the entire answer available. We do not find reversible error in these rulings.

Charge A, given at the request of plaintiffs, is as follows:

"If you are reasonably satisfied from the evidence in this case that the plaintiffs were the owner and in possession of the lands described in the complaint as last amended, and if you are reasonably satisfied from the evidence that the defendant mined or removed the coal from under said lands or from under a part of the same, and if you are reasonably satisfied from the evidence that within one year prior to the filing of this complaint the surface of said lands cracked or broke, damaging the same, and that said crack or break in said surface was proximately caused by the removing or mining of said coal, then your verdict should be for the plaintiff."

[4] The objection raised to this charge is that it fails to postulate that the defendant was the owner or lessee of the minerals and mining privileges, one of the averments of the complaint.

In Sloss-Sheffield S. & I. Co. v. Sampson, 158 Ala. 590, 48 So. 493, it was held that a complaint for injuries to the soil by mines operated thereunder should state whether the mining was done by a trespasser or by one having a right. In that case the complaint merely averred the ownership of the lands in plaintiff. The averment was necessary to define the nature of the action the defendant was called upon to defend. In the case at bar it is averred in the complaint,

and the proof shows without conflict, that plaintiffs were not the owners of the mineral and mining rights. These were severed and reserved in the conveyance under which they hold. The averment that defendant was the owner or lessee of these rights, if material at all in the case at bar, operated merely as an admission of defendant's right, rendering proof unnecessary on that point.

[5, 6] Moreover, the evidence was without dispute that defendant was in actual possession of the mines, operating them at the time complained of and for some years prior thereto. The only controversy was whether it mined under plaintiffs' lands during that time. Possession is evidence of ownership.

[7] It is not necessary for written instructions to postulate admitted facts, or facts shown without dispute in the cause. Charge B, given for plaintiffs, reads:

"I charge you that, if you are reasonably satisfied from the evidence that plaintiff's well was fed by a stream, fixed in its channel, and which stream was 100 or 200 feet above the seam of coal, and if you are further reasonably satisfied that between the stream that fed the well and the seam of coal was a solid strata of rock, then I charge you that defendant would have no right to disturb said well of water in mining said coal."

[8, 9] The law is that the right to mine is subservient to the right of the owner to have the surface maintained in its natural state, free from subsidence or partings of the soil. This right of subjacent support is an absolute right, not dependent upon any question of good or bad mining. The liability for damages resulting from a disturbance of the surface by mining operations is absolute. Bibby v. Bunch, 176 Ala. 585, 58 So. 916; West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849, 23 L. R. A. (N. S.) 805, 135 Am. St. Rep. 127, 18 Ann. Cas. 750; Sloss-Sheffield S. & I. Co. v. Sampson, 158 Ala. 590, 48 So. 493; Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am. St. Rep. 368; Hooper v. Dora Coal Mining Co., 95 Ala. 235, 10 So. 652. The law is different as to subterranean waters. The miner is not liable for any incidental damages necessarily occasioned by the ordinary and careful operation of his mines, not injurious to the surface, such as the loss of springs or wells fed by subterranean streams. Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am. St. Rep. 368; Bagley v. Republic I. & S. Co., 193 Ala. 219, 69 So. 17; Ex parte Birmingham Realty Co., 183 Ala. 445, 63 So. 67; Sloss-Sheffield S. & I. Co. v. Sampson, 158 Ala. 590, 48 So. 493; 27 Cyc. 784.

[10] The charge before us imposes absolute liability, if the well was fed by a stream fixed in its channel, beneath which was an intervening strata of solid rock 100 feet or more in thickness. This is to say, as matter of law, that no necessary and ordinary blasting in mining operations could disturb a well so located. There was no evidence, expert or otherwise, on such issue. While it may be a matter of common knowledge that proper blasting would not break such overhead strata, as to which we do not decide, we think it cannot be said as matter of law that the concussion could not so disturb the channel of the stream as to cause it to lead off in some other direction. The charge invaded the province of the jury, and its giving was error. This error must work a reversal of the cause, unless the giving of this instruction was without injury.

[11] If the evidence, without dispute, shows, subject to no other reasonable inference, that the well was dried up by reason of the subsidence of the surface or parting of the soil from mining operations, then the party responsible therefor would be liable for the loss of the well. In such case, the loss of the well would be the proximate result of a breach of the absolute duty to furnish subjacent support. Sloss-Sheffield S. & I. Co. v. House, 157 Ala. 665, 47 So. 572. The issue for the jury would thus be narrowed to the one question whether defendant company mined under plaintiffs' property.

[12] The evidence tends to show that the well went dry some three weeks after the main crack appeared in the surface in 1921. The weight of the evidence for plaintiffs seems to be that the blasting operations under the lands were in 1917, 1918, and 1919. One witness for plaintiffs, however, dates some of these operations as late as 1921. The well is shown to have been located some 280 yards from the long fissure in the soil. The location of smaller fissures is not shown. The cause of the well's failing is necessarily a matter of inference from the circumstances. It is easily inferred that the appearance of the cracks in the soil and the drying up of the well had a causal connection, but the drawing of such inference vel non was for the jury. We cannot say plaintiffs were entitled to an affirmative instruction on this issue.

Charge B, therefore, threw into the case an erroneous and speculative issue, which, in the opinion of the court, has probably injuriously affected the substantial rights of the parties. For this error, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.