# West Kentucky Coal Company v. Dilback, et al.

(Decided May 10, 1927.)

## Appeal from Webster Circuit Court.

1. **Waters and Water Courses.**—Ordinarily, those engaged in mining operations are not responsible for damages caused by diverting or destroying the flow of water.

2. **Mines and Minerals.**—Surface owners' right to have the surface maintained in its natural state free from subsidence or parting of the soil from mining directly thereunder is absolute, to which the right to mine is subservient.

3. **Waters and Water Courses.**—Coal mine operator is not liable to the adjacent land owner for damages to a well resulting from the subsidence of lateral support, in absence of proof of negligence.

RAYBURN & WITHERS and VERT C. FRASER for appellant.

T. W. JOHNSON and BLACKWELL & LISMAN for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellees are the owners of a certain house and lot in Webster county, Ky., near Wheatcroft. It is a three-room house, with a porch, and at the time of the injuries complained of it was occupied by appellees as a dwelling. On the lot was a good well which furnished water for appellees. The appellant is engaged in operating a coal mine for the production of coal and the operation was not far distant from the house of appellees, although the proof does not show that the operation extended under the premises of appellees, and the nearest point to which the operation extended was about 200 feet from their property. The basis of the action is that appellant negligently and improperly mined and removed coal in such a way as to not leave sufficient support for the overlying surface, and that by reason thereof there was a break or cave-in, as alleged in the petition, and that said cave-in caused large cracks to open through the surface of appellees' property, thereby destroying their well and otherwise damaging the property.

A trial resulted in a verdict for $600 in favor of appellees. The proof shows little or no damage other than the destruction of the well. It does not show that the operation was under the property of appellees. The proof is largely directed towards showing the difference in the value of the house and lot with the well and with-

out the well. It is true, there is some proof showing there were cracks in the surface of appellees' land, but this proof is rather meager, and, assuming it to be true, it does not show that the property was damaged in any material way except the destruction of the well. It is admitted by the witnesses for appellant that there was a subsidence or cave-in about 700 feet from the home of appellees, and that the subsidence extended from east to west. The property of appellees was north of the subsidence and not within the area. This subsidence was about 1,000 feet in length, and 200 to 300 feet in width. There is proof introduced by civil engineers showing that cracks do not extend laterally from a subsidence, but the proof that there were cracks in the surface of appellees' property is persuasive that these cracks were caused by the subsidence. We find no proof in the record that the taking of the coal from adjacent property was negligently done. If the coal had been taken from under the property of appellees and a subsidence had been caused thereby, appellant would be responsible for the resulting damage, regardless of whether the mining operation had been conducted negligently or otherwise. Ordinarily, those engaged in mining operations are not responsible for damages caused by diverting or destroying the flow of water. Ohio Collieries Co. v. Cocke, 107 Ohio St. 238, 140 N. E. 356.

As we have said, the right to mine is subservient to the right of the surface owners to have the surface maintained in its natural state free from subsidence or partings of the soil, and this right of support is absolute and not dependent upon any question of negligence. But this doctrine ought not to be extended any further than applying it to the surface above the mining operation. The mine operators would probably be responsible for diverting a natural stream of water on or in the overlying surface. It was held in the case of Kistler v. Thompson, 158 Pa. 139, 27 A. 874, but even in that case the court appears to have made the recovery dependent on the wrongful or negligent withdrawing of the support which caused the subsidence. In the case of Sloss-Sheffield Steel & Iron Co. v. House, 157 Ala. 663, 47 So. 572, the court appears to have held that it was the absolute duty of a mine operator to furnish subjacent support, and that where he had failed to furnish such support, and a well was dried up by reason thereof, the mine operator was responsible.

It is contended by counsel for appellees that the question in this case is one of lateral support, and that the right of lateral support exists and extends to the property of another although there may be intervening parcels owned by others, and that the right to subjacent support exists and extends to those owning property adjacent to the mining operation. Such seems to be the rule. 40 C. J. 1194. But conceding this to be the rule, there is a further question which arises, and that is whether the mine operator is responsible to the adjacent landowner, regardless of whether his operation is conducted without negligence.

The rule is thus stated in R. C. L., vol. 1, p. 384:

"In accordance with the principles already stated, the owner of land who excavates on or near the boundary line, whereby the lateral support of a building on the land of an adjoining proprietor is removed and the building falls, is not liable if he uses such care as an ordinarily prudent person would use, under the circumstances of the particular case, in making the excavation and building his walls, but he is liable in damages if the injury to his neighbor was occasioned by the negligent and unskillful manner in which the excavation was made or maintained."

This seems to us to be the correct rule governing the question in this case. If the operation had been carried on under the land of appellees, the appellant would have owed to them the absolute duty not to disturb the natural condition of the surface, but as the operation was not going on under the land of appellees, the appellant is responsible only if it can be shown that the operation was conducted negligently. There is little, if any, proof of negligence in the record, and that is natural, as the case was tried upon the theory that appellant owed an absolute duty to the appellees not to molest the natural condition of their property. The first instruction given by the court is erroneous in that it did not require the jury to believe that appellant failed to exercise such care in its mining operations as an ordinarily prudent man would exercise under the same or similar circumstances. It appears that the damages awarded were excessive, even if negligence had been shown.

The judgment is reversed and the cause remanded for proceedings consistent with this opinion.